UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NYS LLC,

        Plaintiff,

v.

UNITED STATES OF AMERICA,
DEPARTMENT OF AGRICULTURE,
FOOD AND NUTRITION SERVICE,

        Defendant.
_____/

Case No. 2:23-cv-11253

Honorable Susan K. DeClercq
United States District Judge

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 19)**

NYS LLC is a gas station and convenience store in Wayne, Michigan. It was permanently disqualified from participating in the U.S. Department of Agriculture's Food and Nutrition Service ("FNS") Supplemental Nutrition Assistance Program ("SNAP") when an investigator found that an NYS employee was "trafficking"—that is, trading cash for SNAP benefits—in violation of FNS regulations. NYS now requests judicial review of FNS's decision, challenging the permanent disqualification. FNS moved for summary judgment, arguing that the undisputed facts support its determination. Because there is no genuine dispute that the trafficking occurred, and because the disqualification was authorized by law, the motion for summary judgment will be granted.

# I. BACKGROUND

FNS administers SNAP, 7 U.S.C. § 2013(a), which strives to "rais[e] levels of nutrition among low-income households" by providing a monthly benefit allowance to be used on eligible food items at participating stores. 7 U.S.C § 2011; 7 U.S.C. § 2019. SNAP benefits are issued through EBT cards, which operate like debit cards, carrying a monthly benefit allotment rather than a cash balance. 7 U.S.C. § 2016(h). When customers pay using EBT cards, the retailer may then redeem those benefits for cash at a bank. 7 U.S.C. § 2019. Notably, a retailer may not redeem SNAP benefits for ineligible items or trade cash for benefits.[1] 7 U.S.C. § 2016(b); 7 C.F.R. § 274.7; 7 C.F.R. § 271.2. Violations of these rules by retailers may result in permanent disqualification from SNAP. 7 U.S.C. § 2021(b)(3)(B); 7 C.F.R. § 274.7.

In March 2021, NYS's owner, Nasser Al Massri, applied to participate in SNAP, which would allow NYS to accept SNAP benefits as payment for eligible food items. ECF Nos. 19 at PageID.136; 19-2. As part of this application, he agreed to accept responsibility on behalf of NYS for any violations of SNAP regulations, including those committed by his employees. ECF No. 19-2 at PageID.161. Among the listed violations were "[t]rading cash for [SNAP] benefits (i.e. trafficking)" and

---

[1] In practice, "trading cash for benefits" could take the form of giving cash back for SNAP benefits or, as occurred here, giving a customer cash in exchange for the use of their EBT card.

"[a]ccepting [SNAP] benefits as payment for ineligible items." *Id.* Around April 30, 2021, NYS's application was approved. ECF No. 19-3 at PageID.164.

From July 30, 2022 to August 31, 2022, an FNS investigator looked into whether NYS was committing SNAP violations. ECF No. 19-4. She identified four violations, including three instances of trafficking by an NYS employee identified only as "Ishaq." *Id.*

Specifically, on July 30, 2022, the investigator reported that an unnamed clerk[2] allowed her to use SNAP benefits for several non-food items (though he did tell her she could not buy *one* of her non-food items with benefits) and overcharged her by $1.35. *Id.* at PageID.168.

On her second visit, the investigator asked the clerk, identified as Ishaq, for cash back for her EBT card, and he replied that the only way she could get cash was if she was willing to sell her card. *Id.* at PageID.170. She asked if Ishaq was willing to buy her card, and he agreed. *Id.* When she asked for cash back, Ishaq put one of her non-food items, a package of toilet paper, into her bag without charging her. *Id.* She let him know she would return. *Id.*

She then reported that on August 8, 2022, Ishaq gave her $400 cash in exchange for the use of her electronic benefit transfer ("EBT") card. *Id.* at

---

[2] It is unclear from the investigator's report if this clerk was Ishaq or another NYS employee.

- 3 -

PageID.172. He agreed that he would use about $800 in SNAP benefits with the card. *Id.*

About one week later, the investigator returned to NYS to pick up her EBT card. *Id.* at PageID.174. When she arrived, she shopped around the store and made her way to the checkout counter. *Id.* There, Ishaq returned her EBT card so she could pay for her items, which included non-eligible purchases. *Id.* After checking out, the investigator offered to let Ishaq keep the EBT card until the end of the month, to which he agreed and again paid the investigator $400 in cash. *Id.* She further learned, when she reviewed her EBT card's transaction history, that Ishaq had spent $822.19 in SNAP benefits between August 8, 2022, and August 13, 2022. *Id.* at PageID.175.

At the end of the month, the investigator returned to NYS to pick up her card. *Id.* at PageID.177. There, she saw Ishaq, who told her that he had been fired because the owner found out that a customer wanted to sell him an EBT card. *Id.* Ishaq returned the card to her and offered to stay in touch nonetheless and continue exchanging cash for benefits in the future. *Id.* Upon checking the EBT card's transaction history, the investigator learned that Ishaq had used an additional $805.13 of her SNAP benefits. *Id.*

On November 21, 2022, FNS notified NYS of its investigation and that it had uncovered evidence of trafficking. ECF No. 19-7. FNS explained that the appropriate sanction for trafficking is permanent disqualification, but that FNS may

impose a civil money penalty if NYS requested it and provided documentation that it meets the required criteria within 10 calendar days. *Id.* at PageID.189. FNS further noted that failure to make a timely request for a civil money penalty would result in permanent disqualification. *Id.* On December 5, 2022, an attorney for NYS responded to FNS, requesting a warning letter instead of permanent disqualification. ECF No. 19-8.

Later in December, FNS responded with its official determination that (1) the violations in the original charge letter did occur at NYS; (2) NYS was ineligible for a civil money penalty because it "failed to submit sufficient evidence" that it met the criteria for the penalty; and (3) NYS would be permanently disqualified from SNAP. ECF No. 19-9 at PageID.202. FNS also informed NYS that it could seek administrative review of the agency's decision. *Id.* On January 2, 2022, counsel for NYS requested such a review. ECF No. 19-10 at PageID.208–12.

On May 1, 2023, the Administrative Review Branch of FNS issued a Final Agency Decision, finding that "there is sufficient evidence to support a finding that the permanent disqualification of [NYS] from participation as an authorized retailer in [SNAP] . . . was appropriate." ECF No. 19-11 at PageID.216. The decision also sustained the prior determination that NYS was not eligible for a civil money penalty, both because NYS failed to timely request such a penalty and because it

failed to provide sufficient evidence of its eligibility. *Id.* at PageID.221. Finally, the decision outlined NYS's right to judicial review of the agency's decision. *Id.*

Accordingly, in May 2023, NYS filed the present case, requesting judicial review of the FNS determination that trafficking had occurred and the permanent disqualification under 7 U.S.C. § 2023. ECF No. 1.

In April 2024, the government moved for summary judgment. ECF No. 19. That motion has now been fully briefed and is thus ripe for review. ECF Nos. 20; 21. For the reasons that follow, summary judgment will be granted.

## II. STANDARD OF REVIEW

### A. Summary Judgment

To prevail on summary judgment, movants must identify record evidence showing that there is no genuine dispute of material fact and that they are entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); FED. R. CIV. P. 56(a). If so, then the burden shifts to the nonmovant to identify specific facts that create "a genuine issue for trial," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (citation omitted), which requires more than a mere "scintilla of evidence," *id.* at 251, and more than "metaphysical doubt," *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). A genuine issue of material fact exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. All inferences must be

reasonable, logical, and drawn in the nonmovant's favor to determine whether any party must prevail as a matter of law. *See id.* at 251–52.

## B. Judicial Review of a Final Agency Decision by FNS

A final agency decision by FNS is subject to judicial review, which consists of "a trial de novo by the court in which the court shall determine the validity of the questioned administrative action in issue." 7 U.S.C. § 2023(a)(15); *id.* § 2023(a)(13). The trial is "limited to determining the validity of the administrative action; the severity of the sanction is not open to review." *Goldstein v. United States*, 9 F.3d 521, 523 (6th Cir. 1993) (citing *Woodard v. United States*, 725 F.2d 1072, 1078 (6th Cir. 1984)). Therefore, "[i]f the agency properly applied the regulations, then the court's job is done and the sanction must be enforced." *Id.* The burden of proof "is upon the aggrieved store to establish the invalidity of the administrative action by a preponderance of the evidence." *Warren v. United States*, 932 F.2d 582, 586 (6th Cir. 1991) (citing *Goodman v. United States*, 518 F.2d 505, 507 (5th Cir. 1975)). Because SNAP regulations allow disqualification upon a single instance of trafficking, 7 U.S.C. § 2021(b)(3)(B), the party opposing summary judgment must raise material issues of fact as to *each* alleged violation. *See McClain's Mkt. v. United States*, 214 F. App'x 502, 505 (6th Cir. 2006).

### III. ANALYSIS

### A. Validity of FNS's Trafficking Determination

First, this Court reviews the evidence *de novo* to determine whether FNS validly determined that a store employee trafficked in food stamps such that NYS violated 7 U.S.C. § 2021(b)(3)(B).

FNS, in arguing that the agency's actions were valid, produced significant evidence that an employee of NYS, Ishaq, trafficked in food stamps. Specifically, FNS provided reports by its investigator, who monitored NYS's SNAP compliance between July 2022 and August 2022. ECF No. 19-4 at PageID.167–78. FNS further provided text messages between Ishaq and the investigator, in which Ishaq discussed plans to traffic in SNAP benefits. ECF No. 19-5. Finally, FNS provided receipts, photos, and an accompanying transaction history documenting the purchases the investigator made with her EBT card at NYS at each of her visits to the store, with an accompanying transaction history. ECF No. 19-5. NYS does not dispute authenticity and accuracy of these exhibits. *See generally* ECF No. 20.

In fact, NYS admits multiple times that Ishaq trafficked in food stamps. *See* ECF No. 20 at PageID.227–28, 235–36, 238, 240, 244–46. But NYS says that these actions cannot be attributed to the store itself. *Id.* at PageID.233 (arguing that the investigation evidence does not "[r]eveal [t]rafficking *on the [p]art of NYS*") (emphasis added). NYS also claims that it "can in fact prove by a preponderance of

the evidence that the instances of trafficking that gave rise to the permanent disqualification did not occur." *Id.* at PageID.244. The only evidence NYS offers in support of that assertion, though, is its owner Nasser Al Massri's declaration, which includes each of the following statements:

> 7. On or about August 22, 2022, I learned of Ishaq's dealings with customers to purchase their EBT cards. I immediately fired Ishaq.
>
> 8. At no time did I ever instruct or advise Ishaq on this behavior. While Ishaq made these purchases, I had no knowledge of these actions.
>
> 9. Ishaq made these purchases using his personal funds and did not utilize any store or business funds. Ishaq made these purchases strictly in his personal capacity. They were not ratified in any way by myself, and of my employees, or my business.
>
> 10. To my best investigation, knowledge, and belief, no instances of trafficking have occurred at my gas station.

ECF No. 20-1 at PageID.283. Contrary to NYS's argument, this declaration is not evidence that the instances of trafficking did not *occur*. Although the declaration states that Al Massri did not believe any instances occurred, it also specifically acknowledges that Ishaq exchanged cash for benefits while employed at NYS. *Id.* In short, there is no genuine dispute that NYS—through one of its employees—*did* engage in trafficking.

Rather than challenging the factual basis for the disqualification—Ishaq's trafficking—NYS continues to argue that the investigator erred in attributing these violations of the SNAP program to NYS because Ishaq acted *on his own behalf* and

only used *his own money*. *Id.* at PageID.235–36. To hammer this point further, NYS cites the investigator's deposition testimony that she did not interact with the store owner at all and that the owner was not involved in the transactions. *Id.* at PageID.245–46; ECF No. 20-1 at PageID.294.

The problem with this argument, however, is that SNAP trafficking rules apply to businesses regardless of whether the owner knew of, approved of, or benefitted from the violation. *Bakal Bros., Inc. v. United States*, 105 F.3d 1085, 1088 (6th Cir. 1997) (quoting 7 U.S.C. § 2021(b)(3)(B)). Rather, disqualification is appropriate if an employee traffics in SNAP benefits, 7 C.F.R. § 278.6(e)(1)(i), by exchanging EBT cards for cash, regardless of whether the employee worked with others or alone. *Id.* § 271.2. Not to mention, NYS agreed in its SNAP application to "accept responsibility on behalf of the firm for violations of the [SNAP] regulations, including those committed by any of the firm's employees . . . . These include violations such as, but not limited to: Trading cash for [SNAP] benefits (i.e., trafficking) . . ." ECF No. 19-2 at PageID.161.

Because there is no genuine dispute that Ishaq trafficked in SNAP benefits while employed at NYS, and because that fact alone supports the agency's determination that a SNAP violation occurred, the agency action was valid and summary judgment is appropriate as to the finding of a violation.

## B. Severity of Sanction

In addition to challenging the finding of a SNAP violation, NYS argues that FNS erred by imposing permanent disqualification as a sanction. ECF Nos. 1 at PageID.9–10; 20 at PageID.237. But fatal to NYS's argument, a reviewing court under 7 U.S.C. § 2023 does not review the *severity* of the sanction applied. *Goldstein*, 9 F.3d at 523. Rather, judicial review is limited to determining whether the administrative action was *valid*. *Id.* Therefore, if the sanction of permanent disqualification is permitted by a proper application of the regulations, then "the court's job is done and the sanction must be enforced." *Id.*

Here, NYS argues that it was entitled to a civil money penalty as an alternative sanction, but it fails to show that the given sanction of permanent disqualification was "unwarranted in law." ECF No. 20 at PageID.237–46. To the contrary, a permanent disqualification is clearly authorized by law where FNS finds an employee has trafficked in SNAP benefits. 7 C.F.R. § 278.6(e)(1)(i). This authorization ends this Court's inquiry. *Goldstein*, 9 F.3d at 524 ("The regulations confer on the FNS discretion to mitigate, by imposing only a civil money penalty, the sanction of permanent disqualification for trafficking . . . . As the decision to mitigate relates to the severity of the sanction, the FNS's denial of [NYS's] request for a civil money penalty in lieu of permanent disqualification is precluded from our review by 7 U.S.C. § 2023 and *Woodard*."). This Court may not, and thus will not,

consider NYS's arguments that it was entitled to a lesser sanction in the form of a warning letter or civil money penalty. *Id.*

In sum, there is no genuine dispute that an NYS employee trafficked in SNAP benefits. And the law authorizes FNS to permanently disqualify NYS from participating in SNAP when such trafficking in found. 7 U.S.C. § 2021. So, this Court's review must end there, and the Government's motion for summary judgment will be granted. *See* 7 U.S.C. § 2023.

### IV. CONCLUSION

Accordingly, it is **ORDERED** that Defendant's Motion for Summary Judgment, ECF No. 19, is **GRANTED**.

Further, it is **ORDERED** that the Complaint, ECF No. 1, is **DISMISSED WITH PREJUDICE**.

**This is a final order and closes the above-captioned case.**

*/s/Susan K. DeClercq*<br>
SUSAN K. DeCLERCQ<br>
United States District Judge

Dated: January 23, 2025